**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | |
|---|---|
| **LEROY BRANTLEY, JR., HAROLD H. RICKS, ROGER SMITH,** and **SHON BUTLER**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>**v.**<br><br>**HANDI-HOUSE MFG. CO., HANDI-HOUSE FINANCIAL CORPORATION, HANDI-HOUSE RENT TO OWN, LLC, JAMES AKRIDGE, JOHN WILKERSON, DONALD FLANDERS, STEPHANIE FLANDERS,** and **BRENDA MONROE WILLIAMSON,**<br><br>Defendants. | Case No.: _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**COME NOW** Plaintiffs Leroy Brantley, Jr., Harold H. Hicks, Roger Smith, and Shon Butler, on their own behalf and on behalf of all others similarly situated, and file this complaint against Handi-House Mfg. Co. (hereinafter "Handi-House"), Handi-House Financial Corporation (hereinafter "Handi-House Financial"), and Handi-House Rent to Own, LLC (hereinafter collectively the "Handi-House Entities"); as well as James Akridge, John Wilkerson, Donald Flanders, Stephanie Flanders, and Brenda Monroe Williamson, and respectfully show this Honorable Court as follows:

### PARTIES

1.     Plaintiff Leroy Brantley, Jr. (hereinafter "Brantley") is an African-American male who, at all times relevant hereto, was employed by the Defendant Handi-House Entities. Brantley worked in various stages of construction and manufacturing of the Handi-House Entities' portable buildings at the Defendant Handi-House Entities' manufacturing plant located on U.S. Highway 1 in Swainsboro, Emanuel County, Georgia.

2. Plaintiff Harold H. Ricks (hereinafter "Ricks") is an African-American male who, at all times relevant hereto, was employed by the Defendant Handi-House Entities. Ricks worked in various stages of construction and manufacturing of the Defendant Handi-House Entities' portable buildings at the Defendant Handi-House Entities' manufacturing plant located on U.S. Highway 1 in Swainsboro, Emanuel County, Georgia.

3. Plaintiff Roger Smith (hereinafter "Smith") is an African-American male who, at all times relevant hereto, was employed by the Defendant Handi-House Entities. Smith worked in various stages of construction and manufacturing of the Defendant Handi-House Entities' portable buildings at the Defendant Handi-House Entities' manufacturing plant located on U.S. Highway 1 in Swainsboro, Emanuel County, Georgia.

4. Defendant Handi-House Mfg. Co. a/k/a and/or d/b/a Handi-House Manufacturing Co., Inc. is a domestic for-profit corporation existing under the laws of the State of Georgia and is subject to the jurisdiction of this Court. Upon information and belief, Handi-House has been in operation for approximately 45 years and is the largest manufacturer of prefabricated, portable buildings/sheds in the Southeastern United States. Handi-House operates its principal place of business in Emanuel County, Georgia and may be served with process of this Complaint by personally serving its registered agent, Don Flanders, at **747 U.S. Highway 1 South, Swainsboro, Emanuel County, Georgia 30401.**

5. Defendant Handi-House Financial Corporation is a domestic for-profit corporation existing under the laws of the State of Georgia and is subject to the jurisdiction of this Court. Handi-House Financial operates its principal place of business in Emanuel County, Georgia and may be served with process of this Complaint by personally serving its registered agent, Stephanie Flanders, at **747 U.S. Highway 1 South, Swainsboro, Emanuel County, Georgia 30401.**

6. Defendant Handi-House Rent to Own, LLC is a domestic for-profit limited liability company existing under the laws of the State of Georgia and is subject to the jurisdiction of this Court. Handi-House Rent to Own, LLC operates its principal place of business in Emanuel County, Georgia and may be served with process of this Complaint by personally serving its

registered agent, Dean Gowen, at **268 Broad Hollow Rd., Swainsboro, Emanuel County, Georgia 30401.**

7.      The Handi-House Entities are inextricably intertwined corporate entities with no obviously distinguishable characteristics, purposes, and/or corporate officers, agents, employees, and/or representatives.

8.      Defendant James Akridge ("Akridge") is a white male and, at all relevant times has been a principal, officer, agent, employee and/or servant of the Handi-House Entities. Upon information and belief, Akridge can be served with process at **19 Owl Road, Twin City, Emanuel County, Georgia.**

9.      Defendant John Wilkerson ("Wilkerson") is a white male and, at all relevant times has been a principal, officer, agent, employee and/or servant of the Handi-House Entities. Upon information and belief, Wilkerson can be served with process at **18 Meadow Road, Swainsboro, Emanuel County, Georgia.**

10.     Defendant Donald Flanders is a white male and, at all relevant times has been a principal, owner, officer, agent, employee and/or servant of the Handi-House entities. Upon information and belief, Donald Flanders can be served with process at **243 Arden Drive, Swainsboro, Emanuel County, Georgia.**

11.     Upon information and belief, Defendant Stephanie Flanders is a white female and, at all relevant times has been a principal, owner, officer, agent, employee, and/or servant of the Handi-House Entities. Upon information and belief, Stephanie Flanders can be served with process at **243 Arden Drive, Swainsboro, Emanuel County, Georgia 30401.**

12.     Upon information and belief, Defendant Brenda Monroe Williamson is a white female and, at all relevant times has been an agent, employee, and/or servant of the Handi-House Entities. Upon information and belief, Brenda Monroe Williamson can be served with process at **231 Highway 46 W., Lyons, GA 30436**.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises under the Constitution, laws, or treaties of the United States, pursuant to: 28

1  U.S.C. § 1343, as Plaintiffs are asserting a claims for violations of their civil rights under 42

2  U.S.C. §§ 1981, 1988, and the Thirteenth Amendment to the United States Constitution; 18

3  U.S.C. § 1961 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"); 29

4  U.S.C. § 206, Fair Labor Standards Act; and 18 U.S.C. § 1581, et. seq. and 42 U.S.C.A. § 1994,

5  et seq., regarding violations of the abolition of peonage. Also, the aggregate amount in

6  controversy is in excess of $5,000,000.00 and at least one member of the Plaintiff class is a

7  resident of South Carolina, and therefore the Court has jurisdiction under the Class Action

8  Fairness Act, 28 U.S.C. § 1332.

9      14.    This Court has supplemental jurisdiction over the state law claims pursuant to 28

10  U.S.C. § 1367(a), as those claims are so related to the federal claims in this action that they form

11  part of the same case or controversy.

12      15.    This Court has personal jurisdiction over this case as all Defendants are residents

13  of Georgia and who, at all times relevant to this case, have resided within the Statesboro Division

14  of the Southern District of Georgia.

15      16.    Pursuant to 28 U.S.C. §1391(b)(1), venue is proper because one or more of the

16  Defendants reside in the Southern District of Georgia. Furthermore, venue is proper in the

17  Statesboro Division of the Southern District of Georgia, pursuant to 18 U.S.C. § 1965(a) and 28

18  U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this

19  action occurred within the Statesboro Division and because Defendants transact business in this

20  division.

21              **COMMON FACTUAL ALLEGATIONS**

22      17.    Upon information and belief, the Defendant Handi-House Entities manufacture,

23  finance and distribute portable, prefabricated buildings/sheds which it places in interstate

24  commerce through a system of authorized dealers throughout the United States, specifically the

25  states of Florida, Alabama, North Carolina, South Carolina and Virginia.

26      18.    Upon information and belief, the Defendant Handi-House Entities employ

27  between 100-140 individuals at its principle place of business on U.S. Highway 1 in Swainsboro,

28  Georgia. The Defendant Handi-House Entities' employees are typically hired to work either in

the manufacturing of the portable buildings, the transporting of the buildings to dealers, or in an administrative/managerial capacity.

19.     At all times relevant hereto, the vast majority of the Defendant Handi-House Entities' employees are African American and work in the manufacturing side of the business.

20.     Upon information and belief, Brantley began working at Handi-House in 1994.

21.     Upon information and belief, Hicks began working at Handi-House in 2013.

22.     Upon information and belief, Smith began working at Handi-House in 2013.

23.     Upon information and belief, Butler is a current employee of Handi-House.

24.     At the time of their hiring, Brantley, Hicks, Smith, and Butler ("Class Representatives") were told they would be paid on an hourly basis for their labor, at a rate of $7.25 per hour.

25.     Defendants Akridge, Wilkerson, Donald Flanders, Stephanie Flanders, and Williamson (collectively the "RICO Defendants"), acting individually and in concert with one another, but using cash derived from Handi-House revenues, made weekly cash loans to Plaintiffs and other similarly situated employees of Handi-House, in advance of their paychecks.

26.     The Class Representatives were coerced very early on in their employment with Handi-House to take cash loans, and were told that it was expected of employees to utilize this lending system.

27.     The Class Representatives began taking cash loans early on in their employment with Handi-House, and continued doing so until their respective terminations.

28.     The terms under which the Class Representatives could take loans were identical. They were entitled to get an advance of $20.00 cash in exchange for allowing Defendants to seize their paycheck and subsequently tender in cash the difference between that paycheck and $26.00, rounded in Defendants' favor.

29.     Upon information and belief, over 250 different employees of Handi-House have taken loans from the Defendants, on terms identical to those offered to the Class Representatives, over the five-year period immediately preceding the filing of this lawsuit.

30.     Upon information and belief, the Defendants have made roughly $3.9 million

worth of loans to its employees over the five-year period immediately preceding the filing of this lawsuit, and have charged their employees $1.17 million worth of interest on those loans.

31.     When Defendants charge their employees $6.00 interest for every week-long loan of $20.00, they are charging an effective weekly interest rate of 30%.

32.     A weekly interest rate of 30% is equivalent to an interest rate of 1,564.29% per annum.

33.     In Georgia, the maximum legal rate of interest for loans under $3,000.00 is 16% per annum.

34.     The RICO Defendants personally profit from the illegal interest that they charge Plaintiffs for making these loans.

35.     The Handi-House Entities also benefit from the illegal lending scheme because these entities forced their employees to endorse their paychecks back to the company and accept net wages that are below state and federal statutory minimum wage guidelines.

36.     All of these illegal loans are made during normal business hours within Handi-House facilities.

37.     Defendants Akridge and Wilkerson have forced Plaintiffs to agree to these loans by making verbal threats and threatening displays of authority. They have also verbally threatened that any Handi-House employee who refuses to take a loan will be suspended without pay or terminated.

38.     Defendants Donald Flanders and Stephanie Flanders have overseen the illegal lending operation and have taken steps to ensure that their co-conspirators continue operating it within Handi-House facilities.

39.     Defendant Williamson is responsible for preparing the payroll checks for the Handi-House Entities. She segregates the payroll checks into two categories: those for employees who have taken loans, and those for employees who have not. She annotates the checks in the former category with the amount of unlawful debt that her co-conspirators intend to collect from Plaintiffs, then distributes those checks to Wilkerson and Akridge for collection.

40.     All of the Defendants have intentionally forced Plaintiffs into a state of financial

dependence wherein they must continue taking new loans to pay off old loans, depriving them of necessary living expenses like child support, rent, food, gasoline, and other important daily expenses.

41.     Upon information and belief, During Brantley's employment with Handi-House, Defendants collected approximately 2,500 unlawful debts from Brantley, and collected approximately $15,000.00 in unlawful interest.

42.     During Ricks' employment with Handi-House, Defendants collected approximately 675 unlawful debts from Ricks, and collected approximately $4,050.00 in unlawful interest.

43.     During Smith's employment with Handi-House, Defendants collected approximately 675 unlawful debts from Smith, and collected approximately $4,050.00 in unlawful interest.

44.     During Butler's employment with Handi-House, Defendants collected approximately 600 unlawful debts from Butler, and collected approximately $3,600.00 in unlawful interest.

45.     Despite making loans, the Defendants have failed to obtain the licenses required by O.C.G.A. § 7-3-29.

46.     The Defendants do not fit under any of the exceptions to the Georgia Payday Lending Act as defined by O.C.G.A. § 16-17-2.

### **CLASS ACTION ALLEGATIONS**

47.     This action is brought as a class action pursuant to 18 U.S.C. § 1961, et seq. and Fed. R. Civ. P. 23 on behalf of all current and former employees of the Handi-House Entities who obtained loans from any Defendant on terms that provided for a rate of interest considered usurious under Georgia law.

48.     The class of Plaintiffs is further divided into three Plaintiff sub-classes defined as follows:

"Minimum Wage Class Members"

*All persons, who are or were formerly employees of Handi-House Mfg.*

*Co., Handi-House Financial Corporation, and/or Handi-House Rent to Own,*
*LLC, who worked during the three-year period immediately preceding the filing*
*of the complaint in this action and were paid less than the Federal minimum*
*wage.*

"RICO Class Members"

*All persons, who are or were formerly employees of Handi-House Mfg.*
*Co., Handi-House Financial Corporation, and/or Handi-House Rent to Own,*
*LLC, during the five-year period immediately preceding the filing of the*
*complaint in this action and who obtained a loan of $3,000 or less with an annual*
*interest rate in excess of 32%, that was originated, offered, made, and collected*
*by James Akridge, John Wilkerson, Donald Flanders, Stephanie Flanders,*
*Brenda Monroe Williamson, and/or one of their agents.*

"Civil Rights Class Members"

*All African-American or Black persons, who are or were formerly*
*employees of Handi-House Mfg. Co., Handi-House Financial Corporation,*
*and/or Handi-House Rent to Own, LLC, during the four-year period immediately*
*preceding the filing of the complaint in this action.*

49.     The names and addresses of the Plaintiff class members can readily be determined by examining Handi-House's employment records.

50.     The amounts loaned and the applicable interest charged can be readily determined from a ministerial review of Defendant Wilkerson's accounting and financial records.

51.     The membership of the class is numerous and joinder of individual plaintiffs is impractical. Upon information and belief, there are currently 150 active employees of the Handi-House Entities that are members of the class, and there are at least 100 former employees.

52.     There are questions of law and fact common to all members of the Plaintiff class, and common questions of law and fact predominate over any individual issues. The principal questions pertinent to the classes as a whole include:

a)       Whether the interest rate the Defendants charged Plaintiffs is usurious

under Georgia law;

b)     Whether the interest rate the Defendants charged Plaintiffs is more than twice the maximum interest rate allowable under Georgia law, for purposes of the RICO statute;

c)     Whether Defendants are licensed with the State of Georgia under the Georgia Industrial Loan Act;

d)     Whether Defendants violated the Georgia Payday Lending Act by operating a payday lending enterprise;

e)     Whether Defendants converted Plaintiffs' funds through a predatory lending scheme;

f)     Whether the Defendant Handi-House Entities conspired to pay their employees less than $7.25 per hour in violation of 29 U.S.C. § 206;

g)     Whether the Defendant Handi-House Entities conspired to pay their employees less than $5.15 per hour in violation of O.C.G.A. § 34-4-3; and

h)     Whether Defendants Akridge, Wilkerson, Donald Flanders, Stephanie Flanders, and Williamson conspired to collect unlawful debts in violation of 18 U.S.C. 1962(c).

53.     The claims of the named Plaintiffs are typical of the claims of the members of the Plaintiff class and subclasses, which all arise from the same operative facts and are based on the same legal theory, and Plaintiffs will thus adequately represent the Plaintiff class. Further, Plaintiffs will fairly and adequately assert and protect the interests of the class in that:

a)     The attorneys for the Plaintiffs are experienced in civil litigation of this general nature, have experience with the subject matter of this action, and will adequately represent the interests of the class; and

b)     There is no conflict in the interests of the Plaintiffs and the interests of the class, but rather Plaintiffs and the class share common interests in the subject matter and remedies sought herein.

54.     The Plaintiffs are aware of no difficulties that will be encountered in the management of this litigation that would render the action unmanageable.

55.     If any individual actions were required to be brought by each of the class

members, a multiplicity of suits would result, causing great hardship to the class members and an undue burden upon the Courts. The prosecution of separate actions by individual class members would create a risk of: (1) inconsistent or varying adjudications with respect to individual class members which would confront Defendant with incompatible standards of conduct; and (2) adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

56.     Plaintiffs are not aware of any litigation in this state against this Defendant already commenced by or against class members involving any of the same issues as those presented herein. Without a class action mechanism, members of the Plaintiff class would be substantially impaired or impeded in their ability to protect their interests. The value of claims of the individual class members would be in an amount that makes prosecution outside of the class action uneconomical. In view of the efficiencies achieved in a class action, there is no material risk that the amount to be recovered by individual class members will be so small in relation to expense and effort of administering the action not to justify class action

57.     The claims of the Plaintiffs and Plaintiff class are meritorious. The named Plaintiffs believe they will prevail on the merits based upon the clear, unambiguous illegality of the Defendants' conduct.

58.     A final judgment on the merits of the named Plaintiffs' claims would be fully dispositive of the claims and interests of those similarly situated who are not specifically named as a plaintiff in this action. Defendants have acted on grounds generally applicable to the class, thereby making final equitable, legal, or declaratory relief appropriate with respect to the class.

## COUNT ONE: Violation of Fair Labor Standards Act (29 U.S.C. § 206)

### (Against the Defendant Handi-House Entities only)

59.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

60.     The Fair Labor Standards Act ("FLSA") mandates that employers compensate non-exempt employees at a wage not less than $7.25 per hour.

61.     The Class Representatives and indeed many in the Plaintiff class have routinely received paychecks where their rate of pay was less than $7.25 per hour.

62.     Often, Plaintiffs have received paychecks of $0.00 or even paychecks of less than $0.00 that Defendants have used to carry over a negative balance to future paychecks.

63.     Plaintiffs are primarily employed in a manufacturing plant that creates durable portable buildings which Defendants place into the stream of interstate commerce.

64.     At all times relevant herein, the Defendant Handi-House Entities have been employers within the meaning of the FLSA, 29 U.S.C. § 203.

65.     Class Representatives, on behalf of themselves and other similarly situated employees who are currently or have previously worked for the Handi-House Entities, are entitled to recover their damages as a result of the aforesaid Defendants' violations of the minimum wage provisions of the FLSA, liquidated damanges in an equal amount, and their reasonable attorneys' fees and cost incurred in bringing this action.

66.     The Defendant Handi-House Entities have willfully, knowingly, intentionally, and recklessly conspired to pay Plaintiffs less than minimum wage, as evidenced by, among other things, the fact that it ceased its illegal payment scheme to seek legal counsel when it learned of a potential lawsuit and then resumed after the lawsuit was not served upon them. As such, Plaintiffs are entitled to recover liquidated damages as a matter of law.

**COUNT TWO: Violation of Georgia Minimum Wage Law (O.C.G.A. § 34-4-6)**

**(Against the Defendant Handi-House Entities only)**

67.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

68.     The Georgia Minimum Wage Law ("MWL") mandates that employers compensate non-exempt employees at a wage not less than $5.15 per hour.

69.     The Class Representatives and indeed many in the Plaintiff class have routinely received paychecks where their rate of pay was less than $5.15 per hour.

70.     Often, Plaintiffs have received paychecks of $0.00 or even paychecks of less than $0.00 that Defendants have used to carry over a negative balance to future paychecks.

71.     At all times relevant herein, the Defendant Handi-House Entities have been employers within the meaning of O.C.G.A. § 34-2-2, and further they have each had sales in excess of $40,000.00 per year.

72.     Class Representatives, on behalf of themselves and other similarly situated employees who are currently or have previously worked for the Handi-House Entities, are entitled to recover their damages as a result of the aforesaid Defendants' violations of the minimum wage provisions of the MWL, liquidated damages in an equal amount, and their reasonable attorneys' fees and costs incurred in bringing this action.

**COUNT THREE: Violations of the Georgia Industrial Loan Act (O.C.G.A. § 7-3-1)**

**(Against all Defendants)**

73.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

74.     Defendants made cash payday loans to Plaintiffs and others similarly situated for amounts less than $3,000 without first obtaining a license from the Georgia Industrial Loan Commissioner as required by the Georgia Industrial Loan Act ("ILA"), O.C.G.A. § 7-3-4.

75.     Any loan contract made by an unlicensed lender in violation of the ILA is null and void as a matter of law.

76.     The Defendants acted in concert to make such illegal loans to Plaintiffs.

77.     All of the loans Defendants made to Plaintiffs, including principal and interest, are null and void.

78.     When the Defendants violated these laws they breached private and legal duties owed to the Plaintiffs, and as a result Plaintiffs are entitled to statutory damages of not less than $100.00 for every $20.00 loan that Defendants made to Plaintiffs.

**COUNT FOUR: Violations of the Georgia Payday Lending Act (O.C.G.A. § 16-17-1)**

**(Against all Defendants)**

79.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

80.     Defendants, acting in concert, have engaged in the business of advancing funds

of $3,000 or less to be repaid at a later date, and thus are engaged in the business of "payday lending" under the Georgia Payday Lending Act ("PLA").

81. Payday lending of any kind is illegal in the state of Georgia.

82. In enacting the PLA, the Georgia Assembly specifically opined that despite the illegality of payday loans in Georgia, "payday lenders have created certain schemes and methods in order to attempt to disguise these transactions" and therefore the PLA was enacted to provide "civil penalties **over and above** those currently existing under state law . . . in order to prohibit this activity in the State of Georgia." O.C.G.A. § 16-17-1(d)

83. The Handi-House Entities' facilities are the sites of a place of business where payday lending takes place in the State of Georgia and thus those facilities are considered a public nuisance pursuant to O.C.G.A. § 16-17-8.

84. As these facilities are a public nuisance, damages for violations of the PLA are "over and above" or in addition to damages for violations of the ILA.

85. Plaintiffs have borrowed amounts less than $3,000 from Defendants.

86. As a result, Defendants have damaged Plaintiffs.

87. Plaintiffs are entitled to $18 (three times the $6 of interest charged) for each $20 loan Defendants made to Plaintiffs, as well costs and reasonable attorney's fees.

88. Upon information and belief, Defendants have made over 195,000 loans over the past five years.

## COUNT FIVE: Common Law Conversion
### (Against all Defendants)

89. Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

90. Any payday loan is void ab initio under Georgia law.

91. All of Defendants' loans to Plaintiffs were thus void ab initio.

92. In order that Plaintiffs could satisfy their void and illegal indebtedness to Defendants, Defendants required Plaintiffs to endorse their paychecks over to Defendants.

93. Defendants often brandished firearms when requiring Plaintiffs to endorse their

paychecks over to Defendants.

94.     Plaintiffs had clear legal rights to the use and possession of their paychecks and to negotiate the same as they saw fit.

95.     Defendants wrongfully and illegally deprived Plaintiffs of their rights to their paychecks by using coercion and duress to force Plaintiffs to negotiate those instruments over to Plaintiffs.

96.     As a result, Plaintiffs were deprived of the use and value of their paychecks, and have suffered damages.

### COUNT SIX: Usury (O.C.G.A. § 7-4-1, et seq.)

### (Against all Defendants)

97.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

98.     Defendants, acting in concert, have engaged in the business of advancing funds of $3,000 or less to be repaid at a later date, and have advanced funds of $3,000 or less to the Class Representatives and the Plaintiff Class.

99.     The aforesaid loans carried an annual rate of interest in excess of 16%, to wit: 1,564.29%.

100.     Defendants have violated O.C.G.A. § 7-4-2(a)(2) and O.C.G.A. § 7-14-18(a), causing harm to Plaintiffs.

101.     The harm suffered by Plaintiffs is exactly the harm sought to be proscribed by law.

102.     As a direct and proximate result of Defendants' violations of the Georgia usury statutes, Plaintiffs and the class were substantially harmed and suffered significant damages.

### COUNT SEVEN: Violations of the Peonage Statute (18 U.S.C. § 1581) and the Trafficking Victims Protection Act (18 U.S.C. §§ 1593A, 1595)

### (Against all Defendants)

103.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

104.    18 U.S.C. § 1581(a) makes it unlawful to hold someone in a condition of peonage and 18 U.S.C. § 1593A makes it unlawful to benefit financially from participation in a venture that has engaged in any act in violation of 18 U.S.C.A. § 1581(a) with knowledge or reckless disregard for the fact that the venture has engaged in such violation.

105.    As described herein, the Defendants held Plaintiffs in a condition of peonage by forcing them into a state of perpetual indebtedness to the Defendants and financial dependence on usurious loans, which the Plaintiffs were not able to get anywhere other than through their employment with the Handi-House Entities.

106.    Defendants forced Plaintiffs to accept weekly loans at a usurious rate of interest with the intent to hold them in a state of perpetual indebtedness to the Defendants and to create financial dependence on the usurious loans.

107.    Plaintiffs were unable to meet their routine weekly financial needs without accepting these loans, which they were not able to get anywhere other than through their employment with the Handi-House Entities, and they were financially unable to seek employment elsewhere, without risking, at best, severe financial hardship, and, at worst, the Defendants following through on the threats made (which, as described above, included intimidation and threatening to fabricate reasons for termination that would prevent Plaintiffs/Employees from obtaining unemployment or securing a replacement job).

108.    In so doing, Defendants compelled and forced Plaintiffs to continue working for the Handi-House Entities by threat, coercion, and duress.

109.    Defendants profited from the usurious interest charged, the Plaintiffs' financial dependence on obtaining these loans on a weekly basis, and the Plaintiffs' inability to break the cycle of debt and obtain other employment.

110.    As described herein, Defendants held Plaintiffs in a condition of peonage, and as a result the Defendants may be culpable of violations of 18 U.S.C. §§1581-1592.

111.    As described hereinabove, Plaintiffs were compelled to work for Defendants by threat, coercion, and financial duress.

112.    Defendants held Plaintiffs in a condition of peonage as prohibited by 18 U.S.C. §

1581(a).

113. Defendants benefitted financially from a venture that held Plaintiffs in a condition of peonage, in violation 18 U.S.C. § 1593A.

114. Pursuant to 18 U.S.C. § 1595, Defendants are liable to Plaintiffs for damages for holding Plaintiffs in a condition of peonage and benefitting financially from a venture that held Plaintiffs in a condition of peonage.

**COUNT EIGHT: Violations of Federal RICO (18 U.S.C. § 1962(c) and (d))**

**(Against Defendants Akridge, Wilkerson, Donald Flanders, Stephanie Flanders, and Williamson)**

115. Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

116. Handi-House and Handi-House Financial are Georgia corporations, and are thus "enterprises" as defined by 42 U.S.C. § 1961(4).

117. Handi-House Rent to Own, LLC is a Georgia limited liability company, and is thus an "enterprise" as defined by 42 U.S.C. § 1961(4).

118. The Handi-House Entities utilize the channels of interstate commerce to market durable portable structures and provide financing for the purchase of those structures.

119. At all times relevant, Defendants Akridge, Wilkerson, Donald Flanders, Stephanie Flanders, and Williamson (again, collectively the "RICO Defendants") were employed by or associated with the Handi-House Entitites.

120. In the operation of their enterprises, the Handi-House Entities collected income derived from payday loans made to Plaintiffs, and since Georgia law defines those loans as unlawful, the enterprises derived substantial income from the collection of these unlawful debts.

121. The RICO Defendants participated in the conduct of the affairs of the enterprises by collecting unlawful debts for the benefit of the enterprises.

122. By way of further elaboration, the RICO Defendants collected debts that were unlawful because Georgia usury statutes define usury as an annualized interest rate of 16% or more, and the annual interest rate the enterprises and the RICO Defendants charged Plaintiffs

was 1,564.29%.

123.    The RICO Defendants converted the enterprises into businesses focused on collecting money at a usurious rate, and the enterprises directly profited from this.

124.    The rate the RICO Defendants charged the Plaintiffs was more than twice the enforceable rate of interest in Georgia.

125.    As a result of the above confluence of factors, Plaintiffs were deprived of their earnings, paychecks, and income, and as a result have suffered damages to their business and property. They are thus entitled to treble damages, punitive damages, and attorney's fees.

## **COUNT NINE: Violations of Georgia RICO (O.C.G.A. § 16-14-1, et seq.)**

### **(Against Defendants Akridge, Wilkerson, Donald Flanders, Stephanie Flanders, and Williamson)**

126.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

127.    Handi-House and Handi-House Financial are Georgia corporations, and are thus "enterprises" as defined by O.C.G.A. § 16-14-3(3).

128.    Upon information and belief, Defendants have made roughly 195,000 payday loans to Plaintiffs in the past five years, and thus have committed roughly 195,000 acts of racketeering activity, as defined by O.C.G.A. § 16-14-3(5)(A)(xxxvii), in the relevant period.

129.    RICO Defendants laundered the proceeds of their illegal payday lending scheme through the Handi-House Entities enterprise(s) in violation of 18 U.S.C. § 1956.

130.    The combined racketeering activities of the RICO Defendants constitute a pattern of racketeering activity, as defined by O.C.G.A. § 16-14-3(4).

131.    The RICO Defendants conspired with one another to participate in the illegal Handi-House Entities lending enterprise through a pattern of racketeering activity.

132.    Plaintiffs have been damaged as a result of the RICO Defendants' actions, and are entitled to treble damages, punitive damages, attorney's fees, and costs, pursuant to O.C.G.A. § 16-14-6(c).

**COUNT TEN: Violation of Civil Rights & Racial Discrimination (42 U.S.C. § 1981)**

**(Against the Defendant Handi-House Enterprises)**

133.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

134.     This Court has original jurisdiction over this matter, pursuant to 28 U.S.C. § 1343, as Plaintiffs are asserting claims for violations of their civil rights under 42 U.S.C. §§ 1981, 1988, and the Thirteenth Amendment to the United States Constitution.

135.     Plaintiffs are members of a protected class as they are members of a minority race, African-Americans.

136.     Plaintiffs have been employed by Defendants for various lengths of time since within the past four years.

137.     At all times relevant, Plaintiffs were in a contractual relationship with Defendants within the meaning of 42 U.S.C. § 1981, as amended.

138.     During the course of Plaintiffs' employment, Defendants have violated Plaintiffs' rights by depriving Plaintiffs of their right to the enjoyment of all benefits, privileges, terms and conditions of Plaintiffs' employment contract "as is enjoyed by white citizens," in violation of 42 U.S.C.A. § 1981(b), as amended.

139.     During the course of Plaintiffs' employment, Plaintiffs have not enjoyed the same benefits, privileges, terms and conditions of employment as have white employees, even though Plaintiffs were meeting the requirements of their employment with Defendants.

140.     Upon information and belief, the employees working in the manufacturing jobs at the plant are nearly all African-American and are all paid below minimum wage, regardless of their respective years of service, education, skill, or experience.

141.     Upon information and belief, the few white and/or non-African American employees who worked in the manufacturing of the portable buildings were paid at higher rates than their similarly-situated African-American counterparts, even though they were doing the same jobs as their African-American counterparts and had no more years of service, education, skill, or experience.

142. The Handi-House Entities also employed individuals as truck drivers to transport the portable buildings away from the plant upon completion of the manufacturing of the portable buildings. Upon information and belief, all of the truck drivers employed by the Defendant Handi-House Entities are white or non-African American and were paid at higher rates than the manufacturing employees, such as the Class Representatives.

143. Upon information and belief, all managerial/administrative staff of the Handi-House Entities are white or non-African American and are paid at higher rates than the manufacturing employees, such as the Class Representatives.

144. Plaintiff/employees sought a pay raise and promotion and approached Defendant Wilkerson regarding about how to apply for a position as a truck driver.

145. When Plaintiff Ricks approached Defendant Wilkerson and expressed interest in working as a truck driver for Handi-House, Defendant Wilkerson told him there was no need to even try because they do not hire black drivers. Defendant Wilkerson has directly stated that he had "never hired a black driver" and "would not hire a black to drive a truck." Defendant Wilkerson also stated that if it were up to him, there would be no black people working for the Handi-House Entities at all.

146. Other similarly-situated Arfican Americans have applied for the position of truck driver for the Handi-House Entities and did not get the job because of their race. Several members of the Plaintiff Class who desired the position of truck driver for Handi-House refused to apply for the position because they had direct knowledge of Defendant Wilkerson's statements, and acting in reliance upon those statements and Handi-House's general practice of racial discrimination, were discouraged from applying.

147. Defendants' treatment, practices and policies directed toward Plaintiffs denied Plaintiffs the full and equal benefits of all laws and proceedings for the security of persons and property "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981, as amended.

148. Defendants' treatment, practices and policies directed toward Plaintiffs, as more fully described in this complaint, denied Plaintiffs the right to make and enforce contracts "as enjoyed by white citizens," in violation of 42 U.S.C.A. § 1981, as amended.

149.     Through their actions and treatment of Plaintiffs, Defendants intended to discriminate against Plaintiffs on the basis of Plaintiffs' race.

## COUNT ELEVEN: Abatement of Nuisance (O.C.G.A. § 41-2-1, et seq.) & Injunctive Relief

### (Against all Defendants)

150.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as fully set forth herein.

151.     The site or location of a place of business where payday lending takes place in the State of Georgia is a public nuisance.

152.     The Handi-House Entities facilities in Swainsboro, Georgia are the site of a place of business where payday lending takes place.

153.     Plaintiffs have been specially injured by this public nuisance, and approximately 150 members of the Plaintiff class are continuing to be injured on a daily basis.

154.     Plaintiffs have filed this complaint, in part, to request abatement of this public nuisance pursuant to O.C.G.A. § 41-2-2.

155.     Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting this public nuisance.

## COUNT TWELVE: Punitive Damages (O.C.G.A. § 51-12-5.1)

### (Against all Defendants)

156.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

157.     Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to consequences.

158.     Despite having ample opportunity to halt their practices, Defendants have doubled down on their illegal behavior and continue it to this day.

159.     At all times relevant to this litigation, Defendants Handi-House, Handi-House Financial, Handi-House Rent to Own, LLC, Akridge, Wilkerson, Donald Flanders, Stephanie

1  Flanders, and Williamson have conspired together to willfully deprive Plaintiffs of their rights

2  under the law.

3         160.    As a result, Plaintiffs are entitled to punitive damages, also known as exemplary

4  damages, in order to penalize, punish, and/or deter Defendants from further illegal activity.

5         **WHEREFORE**, Plaintiffs, for themselves and the plaintiff class, request and demand

6  the following relief:

7                 a)      That an order issue certifying that this action may be maintained as a class

8  action;

9                 b)      That an order issue naming the named Plaintiffs as the class

10 representatives;

11                c)      That an order issue naming Plaintiffs' counsel herein as class counsel;

12                d)      That a preliminary and/or permanent order issue enjoining Defendants

13 from making illegal payday loans to their employees;

14                e)      That judgment be entered against the Defendants for such amounts as the

15 law provides for the various violations shown;

16                f)      That Plaintiffs be awarded punitive damages in an amount sufficient to

17 punish and deter Defendants;

18                g)      That Plaintiffs be awarded pre-judgment interest, costs, and reasonable

19 attorney's fees;

20                h)      For a trial by jury;

21                i)      For such other and further relief as this Honorable Court may deem just,

22 necessary, or appropriate.

23

24

25                        [SIGNATURES ON FOLLOWING PAGES]

26

27

28

Respectfully submitted this 29th day of June, 2017,

**EDENFIELD, COX, BRUCE & CLASSENS, P.C.**

*/s/ V. Sharon Edenfield*
V. Sharon Edenfield
Ga Bar No. 141646
*/s/ Joe E. Mathews, Jr.*
Joe E. Mathews, Jr..
Ga Bar No. 954895
115 Savannah Ave.
P.O. Box 1700
Statesboro, Georgia 30459
Telephone: (912) 764-8600
Facsimile: (912) 764-8862
sharri@edenfieldlaw.com
matt@edenfieldlaw.com

**JOHN J. CZURA P.C.**

*/s/ John J. Czura*
John J. Czura
Ga Bar No. 202950
3602 Wheeler Road
Augusta, Georgia 30909
Telephone: (706) 868-5254
john@czuralaw.com

**TRAVERS W. PAINE III, P.C.**

*/s/ Travers W. Paine, III*
Travers W. Paine, III
Ga Bar No. 559350
560 Ninth Street
Augusta, Georgia 30901
Telephone: (706) 922-3548
Facsimile: (706) 922-3549
tpaine@painefirm.com

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

**CHARLES T. HUGGINS, JR., P.C.**

*/s/ Jeffrey F. Peil*
Jeffrey F. Peil
Ga Bar No. 967902
*/s/ Charles T. Huggins, Jr.*
Charles T. Huggins, Jr.
Ga Bar No. 375430
7013 Evans Town Center Blvd., Suite 502
Evans, Georgia 30809
Telephone: (706) 210-9063
Facsimile: (706) 210-9282
jpeil@hugginsfirm.com
cthjr@hugginsfirm.com